<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3      UNITED STATES OF AMERICA,

 4                 Plaintiff,

 5       v                             No. 18-CR-20325

 6

        GABRIEL RAPHAEL LEAF,
 7
                   Defendant.
 8      _____/

 9
                                   SENTENCE
10
                 BEFORE THE HONORABLE GERSHWIN A. DRAIN
11                   UNITED STATES DISTRICT JUDGE
                 Theodore Levin United States Courthouse
12                   231 West Lafayette Boulevard
                          Detroit, Michigan
13                  Tuesday, October 29, 2019

14      APPEARANCES:

15
         For the Plaintiff:      MS. APRIL N. RUSSO
16                               United States Attorney's Office
                                 211 W. Fort Street
17                               Detroit, Michigan  48226
                                 (313) 226-9129
18
         For the Defendant:      MR. THOMAS W. CRANMER
19                               Miller Canfield Paddock and Stone
                                 PLC
20                               840 W. Long Lake Road, Suite 200
                                 Troy, Michigan  48098
21                               (248) 879-2000

22                               MR. JEFFREY A. CRAPKO
                                 Miller Canfield
23                               150 West Jefferson Avenue, Suite
                                 2500
24                               Detroit, Michigan  48226
                                 (248) 267-3237
25
</pre>

```
Reported by:          Merilyn J. Jones, RPR, CSR
                      Official Federal Court Reporter
                      merilyn_jones@mied.uscourts.gov
```

TABLE OF CONTENTS

**WITNESSES:  PLAINTIFF**                                    **PAGE**
None

**WITNESSES:   DEFENDANT**
None

**OTHER MATERIAL IN TRANSCRIPT**:
Proceedings                                           3

**EXHIBITS:**                  Identified              Received
None

1          Detroit, Michigan

2          Tuesday, October 29, 2019 - 2:07 p.m.

3          THE CASE MANAGER:  All rise.  The United States

4    District Court for the Eastern District of Michigan is now in

5    session.  The Honorable Gershwin A. Drain presiding.

6          The Court calls the criminal matter, United States

7    of America versus Gabriel Raphael Leaf.  Case Number

8    18-CR-20325-1.

9          Counsel, please state your appearances for the

10   record.

11         MS. RUSSO:  Good afternoon, your Honor.  April

12   Russo on behalf of the United States.

13         MR. CRANMER:  Your Honor, good afternoon.  Thomas

14   Cranmer and Jeff Crapko on behalf of the defendant, Mr. Leaf.

15         THE CASE MANAGER:  You may be seated.

16         THE COURT:  All right.  Good afternoon.

17         All right.  Today is the date set for sentencing

18   in this matter, and have both counsel, for the record, received

19   a copy of the presentence report and, Mr. Cranmer, have you had

20   a chance to discuss it with your client?

21         MR. CRANMER:  I have, your Honor.

22         THE COURT:  Any objections, corrections,

23   deletions, anything like that?

24         MR. CRANMER:  Your Honor, we had some proposed

25   revisions which were taken care of earlier by the probation

1  department.

2           There are no unresolved issues, so we're satisfied

3  with the probation report as it stands.

4           THE COURT:  And the guidelines also, just for the

5  record?

6           MR. CRANMER:  Yes.

7           THE COURT:  Ms. Russo, anything?

8           MS. RUSSO:  No objections, your Honor.

9           THE COURT:  Okay.

10          All right.  Let me acknowledge having received and

11 reviewed the sentencing memorandums that were submitted by both

12 sides, and I also have a number of letters attached to the

13 defendant's sentencing memorandum and a couple of letters that

14 have been submitted by the government.

15          So, at this point I'm prepared to hear any

16 allocution by counsel.

17          Mr. Cranmer, I would hear from your first and then

18 Ms. Russo and then Mr. Leaf at the end.

19          And I understand, Ms. Russo, you've got someone

20 who will be speaking with regard to MV1.

21          MS. RUSSO:  That's correct, your Honor.  The

22 mother of Minor Victim One is here.

23          THE COURT:  Okay.

24          All right, then, Mr. Cranmer, I'll hear from you

25 first, and I indicated I've reviewed the sentencing

1 memorandums.  So, you may.

2 　　　　　　　　MR. CRANMER:  All right.  Thank you.

3 　　　　　　　　Should I have Mr. Leaf join me?

4 　　　　　　　　THE COURT:  You can, yes.  Yes.

5 　　　　　　　　MR. CRANMER:  All right.

6 　　　　　　　　Your Honor, let me begin by thanking the Court for

7 this opportunity.  As the Court has indicated, I know you've

8 already read the sentencing memoranda that were submitted in

9 this case, and so, I hope not to repeat myself.

10 　　　　　　　　But there are some things that I did want to talk

11 to the Court about and hopefully the Court will indulge me in

12 that regard.

13 　　　　　　　　THE COURT:  All right.

14 　　　　　　　　MR. CRANMER:  Your Honor, if I had one thing to

15 ask of the Court in connection with today's sentencing, it's to

16 focus on the nature of the conviction, and more particularly,

17 the specific facts that led to this particular conviction.

18 　　　　　　　　Mr. Leaf has been charged with what I think is

19 probably the most serious of the child pornography offenses:

20 Production of child pornography, and the reason I say that, of

21 course, is that it carries with it the most significant

22 penalty, and that is a mandatory 15 years up to 30 years.

23 　　　　　　　　And I certainly would acknowledge, as we did at

24 the time of the plea and in the context of the sentencing

25 memoranda, that his conduct does fit the statutory elements of

1   that offense.

2           But I have to say to the Court that as I was

3   reviewing this case and thinking about it from the very

4   beginning, I do wonder if this factual scenario is the kind of

5   scenario that congress was thinking about when it passed this

6   very, very severe statute.

7           This case does not involve any of the horrific

8   crimes that we've seen on television, heard about, read about,

9   perhaps the Court has even seen:

10          There's no involvement of the "dark web".

11          There's no production of horrific videos of

12   children being abused and sexually taken advantage of.

13          There's no human trafficking involved in this

14   case.

15          There's no group activity that was involved.

16          There was no sale of the alleged pornographic

17   incidents, images, in fact, they are pornographic.

18          There's no sharing of those images in any way,

19   shape, or form.

20          This case is about eight images.  Eight images or

21   pictures that the defendant took of a minor's genitalia.  The

22   pictures were taken at one time and that's what leads to his

23   conviction of production of child pornography.

24          Forensics have confirmed, and I think the

25   government would tell you that there's no indication that any

1    of these images were shared with anyone.  They were stored on

2    the defendant's phone and that's where they remained.

3               So, for having taken these eight pictures, the

4    defendant now faces a mandatory 15 years in a federal prison.

5               Now in making these comments I want to be

6    absolutely clear to the Court that I don't intend to in any

7    way, shape, or form diminish what did occur here.  I don't want

8    to be disrespectful to the victim or the victim's family.  The

9    pain they have is real.  The suffering they've incurred is

10   real, and we acknowledge that.  And the defendant from the very

11   beginning has accepted responsibility and he has indicated

12   extreme remorse.  I think the Court saw that in the letter that

13   he submitted to the Court, and I expect that Mr. Leaf will

14   address you later on and tell you more about that.

15              But, it seems to me that this case is the essence

16   of what judges do in criminal cases and that's to try to

17   determine a punishment that fits the crime, the specific crime

18   in this case, and that's the taking of those eight images at

19   one time.

20              And I think that, you know, coincides with the

21   statutory requirements that the Court knows only too well, and

22   that is to impose a sentence that is sufficient, but not

23   greater than what is necessary to accomplish the myriad of

24   goals of sentencing as set forth in factors 3553.

25              And we've discussed a number of those factors, but

1    I want to focus on one in particular that perhaps I didn't

2    touch upon as much in the sentencing memorandum and that's the

3    issue of disparity, or what I call, proportionality.  I have to

4    believe that this conduct in the context of the statute itself

5    is at the absolute lowest end of the production offense.  It's

6    hard to imagine something that would be less significant or

7    less severe than in this instance, unless perhaps it was only

8    the taking of a single photograph.  But I think in this

9    instance whether it's one image or eight images all taken at

10   the same time, it's at the very lowest end of what I believe is

11   the offense of conviction in this case.

12         And it seems to me that we have to also think of

13   disparity and proportionality in a larger sense, and, again, as

14   I was preparing for today's sentencing, I thought about

15   literally 40 years ago I was in the same position as Ms. Russo

16   and I recall very specifically investigating a case for many

17   months, and I was in the drug unit, and without going into all

18   the details, we eventually convicted defendant of operating a

19   continuing criminal enterprise and it had to do with the

20   distribution of literally hundreds of kilos of heroin in the

21   city of Detroit.  And it caused countless misery and certainly

22   many, many deaths.  That defendant received a 10-year sentence.

23   This defendant now for what he's done is facing 15 years, and

24   that disparity at least to me was significant.

25         The person who stands before you I think is best

1    described in our sentencing memorandum, and I would tell the
2    Court that I thought some on the letters that were written by
3    his supporters were some of the best I've ever seen as a
4    defense lawyer.

5            He is a person who at one time had an extremely
6    bright future.  He was the president of his junior class in
7    high school, and his senior class in high school.  He was the
8    captain of the ski team, captain of the tennis team, and went
9    on to the University of Michigan with hopes of becoming a
10   doctor.  Somehow, someway that got off track.  And I think the
11   reason that it did get off track, that very promising career,
12   was as a result of the abuse that he suffered when he was a
13   young man.  And we've described that in some detail in our
14   sentencing memorandum.  Incidents that occurred when he was
15   both in high school and in middle school or junior high and
16   also in college.

17           And I want to be very clear that I'm not offering
18   that as an excuse, but rather, I think an explanation really of
19   perhaps why such a promising individual is in the position he
20   is in today before the Court.

21           He's been in treatment since 2017 with Dr. Barbara
22   Cross, a PhD psychologist up in Northern Michigan, and I
23   believe the Court received a letter from her as well, talking
24   about that treatment, talking about what she perceives to be
25   his prognosis and certainly hopeful that in connection with the

1  sentence the Court imposes that the Court will also, to the
2  extent it can, see to it that he receives continued treatment
3  because he's benefitted from that, and 15 years will give him
4  an awful long time to have treatment.

5          He -- Mr. Leaf has wonderfully supportive parents,
6  and I would tell you that I'm absolutely convinced that he is
7  someone, while he deserves to be punished for this offense, he
8  is someone worth redeeming and worth saving.

9          And so, it's for these reasons, your Honor, and
10 those set forth in our sentencing memorandum, that we have
11 respectfully requested the Court do the following:

12         To impose a sentence of 15 years, the mandatory
13 minimum the Court must impose, in a federal institution.

14         That pursuant to the agreement we've reached, I
15 believe, with the government, that sentence run concurrently
16 with the state court sentence.

17         That he receive credit for the time he's been in
18 federal custody.

19         And then, I would also ask that the Court
20 recommend that he be sent to a camp and preferably the camp at
21 Morgantown, West Virginia.

22         Your Honor, unless the Court has questions for me,
23 I have nothing further for the Court.

24         THE COURT:  I don't, and your sentencing
25 memorandum and supporting letters were pretty thorough.

1          I don't have any other questions, and I'll hear

2     from Ms. Russo now.

3          MR. CRANMER:  Thank you.

4          THE COURT:  All right.

5          MS. RUSSO:  Thank you, your Honor.

6          Your Honor, the government is requesting a

7     sentence below the guidelines in this case and we are leaving

8     it to your discretion as to what sentence to provide.

9          However, I do want to talk about some of the

10    3553(a) factors, and I do disagree with defense counsel that

11    this is a case that is, that perhaps the statute was not

12    designed for or perhaps at the very lowest end of all

13    production cases.

14         This is not the least severe conduct that someone

15    could be committing to be convicted of such an offense, your

16    Honor.  This is an offender who produced child pornography of

17    not just one child, but two.  It's an offender who not only

18    produced child pornography, but engaged in hands-on offenses,

19    who touched children.  Many of our production cases don't

20    involve any touching.  They may involve web camera sort of

21    situations or they may involve someone taking a picture without

22    engaging in that kind of conduct.

23         Here we know that the defendant touched not only

24    these two children, but two others inappropriately, and so I

25    certainly do not think that this is a case that falls at the

1    low end.

2              In addition to that, your Honor, this defendant

3    put himself on Care.com specifically so that he could get

4    access to children, and if you read the statements from Minor

5    Victim One and Minor Victim Two's parents, you know that he

6    participated in months and months of grooming, not just these

7    children, who he produced child pornography of, but also of

8    grooming their families, of getting the families to trust him

9    and then taking advantage of that trust that they gave him in

10   touching their children when he was not around, when they were

11   not around.

12             So are there worse production cases?  Yes, your

13   Honor.  Absolutely there are.

14             And is there conduct that we've seen, that this

15   court has seen that is more egregious than Mr. Leaf's conduct?

16   Yes.

17             But is this at the very low end of the spectrum?

18   No.  Not at all, your Honor.

19             When we look at the history and characteristics of

20   this offender, I look at what happened to Mr. Leaf as a child

21   and I look at the overwhelming support that he has from the

22   family and his community and I think those are mitigating

23   factors in this case, your Honor.

24             But what I will say is that what Dr. Ulrich noted

25   and what is sort of a pervasive theme throughout Dr. Ulrich

1    evaluation of this defendant is that he is using what happened

2    to him as a child to justify what he did to these four

3    children, and that he's failing to take responsibility for his

4    actions and doesn't feel true empathy or true remorse.

5              And when I look at this evaluation from Dr. Ulrich

6    that's been submitted by defense -- that was done, by the way,

7    your Honor, only with the knowledge of Minor Victim Two's

8    victimization, not of, with the knowledge of all these other

9    victims that have since come to light.

10             So this evaluation was done prior to all the four

11   victims that we now know about.

12             But even looking at the evaluation as it stands,

13   it is not a glowing report for Mr. Leaf.  Dr. Ulrich notes that

14   he tends to have little incite into his own psychological

15   state.  That he's impulsive.  That he overuses denial to

16   control sexual or aggressive -- that individuals with his

17   profile may overuse denial to control sexual or aggressive

18   impulses.  That he may view others as being responsible for his

19   difficulties.  His close relationships are somewhat superficial

20   and rocky.  And that in theory individuals with this profile

21   tend not to be very serious therapy candidates.  They use

22   denial a great deal and have limited psychological incite.

23             He placed him in the highly problematic range in

24   terms of his social desirability score, and he said that people

25   with that kind of score may have an unwillingness or inability

1  to respond truthfully on other sections of the questionnaire.

2  And then, your Honor, he also said that Mr. Leaf's

3  result on the cognitive distortion score was in the problematic

4  range.  And he described that specifically the answers on this

5  part of the test that were given were problematic because it

6  showed that there were items that Mr. Leaf answered that would

7  result in need for clarification on the following questions:

8  Whether children are usually the one to start sex

9  with adults; whether children often flirt with adults; whether

10  children who have sex with adults quite often have had sex with

11  many adults before, and if a child doesn't object to having sex

12  with adults, it means they want to continue; kids want adults

13  to show them about sex, and children are interested in seeing

14  adults in the nude.

15  All of these questions that he struggled with,

16  your Honor, show his lack of responsibility; show his inability

17  to see the way that he's harmed these children and put the

18  children as the responsible party, rather than himself.

19  And I think that along with the Static-99R, which

20  also listed him as above-average risk, is concerning.

21  When this case, when I look at this evaluation,

22  it's one of the worse I've seen, not one of the best, but when

23  I balance that with Mr. Leaf's young age and the support that

24  he has from his family and the community and his very difficult

25  childhood with the abuse, I come out with the fact that a

1 downward variance is appropriate in this case, but we have to

2 look at all these very concerning factors that go to protection

3 of the public and deterrence when we think about what, what

4 sort of downward variance to grant.

5 And so, finally, your Honor, I want to just touch

6 on those last factors:  Deterrence and protection of the

7 public.

8 Because Dr. Ulrich's report isn't a glowing

9 report, I have very high concerns about this defendant and what

10 he may do to other children.  I am very concerned about the

11 impact that he's already had on these four families, on these

12 children and their families as they go forward.

13 As you saw, your Honor, there -- not just these

14 children are in therapy, but their entire family are in therapy

15 and this is years later after these offenses were committed

16 that these families are still struggling because of what Mr.

17 Leaf did.

18 And I know that Minor Victim One is not here in

19 court today, does not know that this is happening, and that's

20 because of the impact and the trauma that just knowing that

21 this hearing is going on might have on him.  He's still a

22 teenage boy and he's still trying to get through what happened.

23 And so, I think that if, when we're looking at

24 what sentence to give Mr. Leaf, we have to think about those

25 factors, too, about whether if he gets released, if he would do

1   this to one other child, and the risk is not worth taking that

2   he might do so, your Honor.

3          And so with that, I just want to ask -- Minor

4   Victim One's mom is going to come up here and make a statement,

5   your Honor, and also I want to make sure that you were able to

6   read Minor Victim Two's parents' statements, the father and the

7   mother?

8          THE COURT:  Yes.  Yes, I did.

9          MS. RUSSO:  Thank you, your Honor.

10         And then --

11         THE COURT:  I don't see a name or a relationship

12  with regard to, I think, the mother, but I do see MV2's father

13  and the comments that he made.  And so, I have reviewed those.

14  The typing looks the same, from the same word processor, so...

15         MS. RUSSO:  Thank you, your Honor.

16         I think Minor Victim Two's mother's name is at the

17  end of her statement, but it may, the minor victim's name is

18  not in that statement.  It doesn't say, Minor Victim Two or

19  Minor Victim One, but I believe her, the mother's name is at

20  the very end of the statement.

21         THE COURT:  Yes.  I see that.

22         MS. RUSSO:  Yes.  So that's that minor victim.

23         And Minor Victim One's mother is going to come up

24  here now, your Honor.  Thank you.

25         THE COURT:  All right.

1              MINOR VICTIM ONE'S MOTHER: Hi.

2              THE COURT: Good afternoon.

3              MINOR VICTIM ONE'S MOTHER: Good afternoon.

4              So, Gabriel, I wrote a letter to the judge how

5    your crime has affected our family.  Because of your lies, I

6    don't really think you have any interest in hearing it, so I

7    won't talk about that.

8              For me I feel like I was groomed just as much as

9    my son, and your crime to our family was selfish.  The fact

10   that you arrogantly continued to contact our family, after your

11   crime, you ask for generosity, is inexcusable.

12             THE COURT: When you say, "you", you're talking

13   about the defendant?

14             MS. RUSSO:  I'm talking to Gabriel.  Yes.

15             THE COURT:  Okay.

16             MS. RUSSO:  When I hired you, I asked you to just

17   keep them safe.  But instead you were selfish and you did not

18   keep them safe.

19             I'm a scientist and I researched the ability to

20   change, and I had an opportunity to interview a prison

21   psychologist to see what help would be available to you.  I was

22   sad about what I read and heard and my husband reminded me that

23   you were young and smart and you have the love, support, and

24   the faith of your parents.  These conditions can only create

25   hope for change.

1          You were named after two archangels.  This, too,
2    brings hope for change.

3          I have prayed for you and your parents, as I
4    cannot imagine the pain of their loss.

5          I ask that you never contact my children for their
6    entire lives.  Ever.

7          When we first met, we all attended a program of
8    Eva Mozes Kor, who was survived the medical experience,
9    experiments on twins during the Holocaust.  Her message was the
10   message of forgiveness, and forgiveness -- her whole message
11   was forgiveness is the seed for peace.

12          Our family is stronger than this evil and we will
13   continue to seek peace.

14          THE COURT:  Thank you.

15          MS. RUSSO:  That concludes the government's
16   argument, your Honor.

17          THE COURT:  All right.

18          All right, Mr. Leaf, it's your time to speak if
19   you choose to.  You don't have to, but you can if you want to.

20          THE DEFENDANT:  Your Honor, I'd like to start by
21   apologizing to all those involved.

22          I'd like to apologize to the families.  I know I
23   abused their trust.  I know I abused their faith in me and for
24   that I am forever sorry.

25          I know words cannot heal the pain that I have

1   caused, but hope that they can be a start.  I am deeply

2   remorseful for what happened.  I'm not remorseful just because

3   I was caught, but for the actions that happened in the first

4   place.

5         None of this:  The pain, the misery, the tears,

6   any of this was intended.  I wish I could go back and stop it

7   all from happening.

8         I pray that the scars that have been left on so

9   many can begin to heal.  It was the Reverend Doctor Martin

10   Luther King who said that darkness cannot cast out darkness,

11   only light can.  I'm hoping that there can be a light

12   throughout all this that provides guidance, gives strength, and

13   comfort to all in the times that come.

14         And for that, your Honor, I thank you.

15         THE COURT:  All right.

16         All right.  This is a really kind of challenging

17   case for me because I know there's some serious harm to the

18   victims in this case, and even though it's not physical, it's

19   mental, emotional, and otherwise.

20         And the law gives me some very specific things to

21   look at when I impose sentence and I have to look at the nature

22   and circumstances of the offense, and these sexual offenses are

23   difficult to really assess the impact they're going to have

24   long term.

25         It's pretty clear that the defendant in this case

1   had some long-term effects because of the abuse that occurred

2   with him and it's also both mitigating and aggravating the

3   situation here.

4           It is pretty amazing that Mr. Leaf did have quite

5   a remarkable history up until these cases, and he had a lot

6   going for him educationally, sports wise, getting into

7   Michigan, staying there until recently, and it's just, it's a

8   real unfortunate situation.

9           And I guess in some ways I kind of like the letter

10  that MV2's father wrote and it's good to see the forgiveness

11  and the attempt to understand the conduct that's involved here,

12  and it's just pretty remarkable.

13          And I guess in some ways I just, along with MV2's

14  father, don't understand the conduct, and it's a good thing

15  that we in our society protect children.  Because this is a

16  clear case of abusing children, taking advantage of them,

17  taking advantage of parents, really planning and scheming to

18  commit these sexual acts involving young boys and their

19  genitalia.  Clearly subterfuge to engage in the conduct,

20  planning, even though not real serious physical assaults, these

21  are assaults.  There's a lot of emotional trauma that occurs as

22  a result of the activities.

23          And so it's a very serious case, and the law

24  reflects the fact that it's a very serious case with a

25  mandatory minimum of 15 years.

1          Again, as I mentioned, the defendant was a class

2   officer in his high school and just really had a lot of things

3   going for him and I don't understand why he would engage in

4   this kind of conduct.

5          The law requires that I look at deterrence, and

6   the sentencing should reflect an attempt to deter the

7   defendant, Mr. Leaf, from engaging in this kind of conduct in

8   the future, and to deter others who may want to engage in this

9   kind of conduct.  So deterrence is a factor.

10          Protecting the public is another consideration.

11   Protecting the public or a subsection of the public that

12   involves young children, and particularly young boys.

13          And then the Court has to also look at avoiding

14   disparities and how other people are treated who commit these

15   types of offenses.

16          And, again, the defendant's guidelines are very

17   high.

18          And so, again, it's really a very difficult case

19   to decide and to impose a sentence on.

20          I looked at the reports and they're somewhat

21   helpful.  They both suggest that the defendant is not a

22   pedophile, although, there's evidence to the contrary.

23          But, Mr. Leaf, you know, whatever you do, you

24   cannot mess with children.  You cannot mess with children.

25   They're a protected entity in our society, and whatever kind,

1    other sexual conduct you engage in, you cannot be involved with

2    children, and that's the gravamen of your offense here.

3            And so, again, I've read the letters.  I think

4    there's a lot of empathy that's reflected in them.  You do have

5    a lot of support.  There's a number of letters that were

6    attached to Mr. Cranmer's sentencing memorandum.  All positive

7    in your favor.

8            And so, I've decided to vary downward.  I think

9    that the sentence I impose will be enough, because I'm required

10   to impose a sentence that's sufficient, but not greater than

11   necessary to achieve the goals of sentencing, which are

12   deterrence, rehabilitation, protection of society, and all of

13   those things.

14           And so it's the judgment and sentence of the

15   Court, pursuant to the Sentencing Reform Act of 1984 and the

16   Court looking at the sentencing guidelines and varying downward

17   from them, and also looking at the factors that are contained

18   in Title 18, United States Code, Section 3553(a), I hereby

19   commit you to the custody of the United States Bureau of

20   Prisons for a term of 180 months, and that's to be served

21   concurrently to the 13th Circuit Court case, Docket Number

22   1712814.

23           And upon your release from prison, Mr. Leaf,

24   you'll be placed on supervised release for a period of eight

25   years, and I'm further ordering that you pay a special

1    assessment of $100, which is due immediately.

2              I'm also ordering that you pay a Justice For

3    Victims of Trafficking Act assessment of $5,000 per victim

4    here, Victim One and Victim Two.

5              I'm also waiving, because of your financial

6    condition, the imposition of a fine, the cost of incarceration,

7    and the cost of supervision, due to your lack of financial

8    resources.

9              And I'm requiring restitution in the amount of

10   $20,000 payable to the victims of this offense, MV1 and MV2.

11             And I'm also going to require that you participate

12   in the Inmate Financial Responsibility Program at the facility

13   you're designated to.

14             There's also going to be mandatory drug testing,

15   because there's evidence here about substance abuse.

16             And while you're on supervised release, I'm also

17   requiring that you comply with all the standard conditions of

18   supervised release, and, in addition to that, you must comply

19   with the requirements of the Sex Offender Registration and

20   Notification Act as directed by the probation department, and

21   the Bureau of Prisons, and I'm also requiring that you not only

22   participate with the federal registration requirement, but also

23   the state registration requirement in the location where you

24   reside, work, and maintain a student status, and the area that

25   you've been convicted in.

1          And I'm also requiring that you must not have any

2    direct contact with any children you know or reasonable should

3    know who are under the age of 18, which wouldn't include your

4    children if you marry and have children, without the prior

5    permission and approval of the probation department or

6    probation officer.

7          And if you have any direct contact with any child

8    you know or reasonably know it be under the age of 18; that is,

9    you'll be required to seek the permission of the probation

10   officer supervising you before that happens.

11         And also, you're not to have any direct contact,

12   written communication, in-person communication, or physical

13   contact with minors under the age of 18.

14         And I'm also going to require that you participate

15   in the Computer Internet Monitoring Program administered by the

16   probation department and that you abide by the requirements of

17   that program.

18         And for purposes of accounting for all computer

19   hardware, software, and accessories, you'll have to submit your

20   person, your residence, your computer, and your vehicle for

21   searches by the probation department at a reasonable time and

22   manner.

23         And I'm also requiring that if you marry or date a

24   person with a minor under the age of 18, you must notify them

25   of your conviction.

1            And you must not purchase, sell, view, or possess

2 any images in the form of media or live venue that depict

3 pornography, sexually explicit conduct, child erotica, or child

4 nudity, and you must not patronize any place where such

5 material or entertainment is available.

6            Also, you must not access the internet, except for

7 reasons approved in advance by the probation department.

8            You must also participate in a mental health

9 treatment program following the rules and regulations of that

10 program on an if necessary basis.  And you're to consult with

11 the probation officer with regard to the treatment that you'll

12 be required to participate in.

13            You also must participate in a sex

14 offense-specific assessment.

15            And the probation officer supervising you will be

16 allowed to periodically polygraph you at that person's

17 discretion to make sure that you're in compliance with the

18 supervision requirements.

19            And I'm also going to require that you have your

20 finances open and available to the probation department for

21 purposes of making restitution to the victims in this case.

22            And I'm also requiring that you not be able to

23 open up any new credit charges and that there be, or open lines

24 of credit without the approval of the probation officer, and

25 that restitution be made through the probation department.

1          And so those are the special conditions of the

2    supervised release that I'm imposing, and as I understand it,

3    Count Two is going to be dismissed at this point; is that

4    correct?

5          MS. RUSSO:  That's correct, your Honor.

6          THE COURT:  Okay.  All right.  I'm also going to,

7    and I think I've already indicated that this sentence is to run

8    concurrent with the state sentence.

9          I'm going to require that you continue with sex

10   offender treatment and rehabilitation.  I'm also going to

11   recommend to the Bureau of Prisons that you go to a camp, and

12   I'll recommend the camp at Morgantown, West Virginia, which is

13   the federal correctional facility.

14         All right.  Is there anything else we need to take

15   up at this point with regard to the sentence that's imposed?

16         MS. RUSSO:  Your Honor, we will file -- I've

17   spoken to defense counsel about this.  We will file a stip and

18   order with respect to the restitution, and I will provide the

19   names of the persons to be paid that restitution to the

20   probation department.

21         And then with respect to forfeiture, I believe

22   there's a forfeiture agreement in the plea agreement.  I'd just

23   ask that that be made part of the judgment that any devices

24   that have any explicit content on them be forfeited, your

25   Honor.

1          THE COURT:  And I will grant that order of

2     forfeiture.

3          All right, Mr. Leaf, you've got a chance to kind

4     of rewire yourself.  I don't know.  One of the victim's father

5     talked about understanding why you do what you do, and what you

6     do or what you've done is wrong, and there's no question about

7     that, and if you come out and continue to do the same thing,

8     you're going to be looking at maybe spending the rest of your

9     life in prison.

10          So, work on rewiring and rehabilitating yourself

11     and changing, because I do believe that you can change.  You

12     can be rehabilitated, and you must, because, like I said,

13     you're going to be going right back to prison if you don't.

14          So, I want to kind of wish you luck.  You're going

15     to be on supervised release to me when you're released, and I

16     intend to very strictly enforce the conditions of the

17     supervised release, and I won't hesitate to send you back to

18     prison if you engage in any kind of a violation of the terms

19     that I've imposed.  So be aware of that and remember that as

20     you move forward from here.

21          Anything else?

22          MS. RUSSO:  Just, your Honor, Mr. Leaf did waive

23     his right to appeal in the plea agreement.

24          THE COURT:  Okay.

25          MS. RUSSO:  And I guess I would also ask, I know

1    Minor Victim One's mom would like him not to have any contact

2    with her children when he gets released.  I know they won't be

3    children at that point, but I'd ask if that can be part of the

4    supervised conditions.

5                    THE COURT:  I will add that as a condition that

6    there be no contact with the families of Minor Victim One and

7    Minor Victim Two with the families or the children at all, and

8    it will be an violation of the supervised release if that

9    happens.

10                   All right.  So, his right to appeal has been

11   waived, is waived for everything, except ineffective assistance

12   of counsel, and in this case Mr. Cranmer has really done a good

13   job in terms of representing Mr. Leaf.

14                   So, anything else we need to take up at this

15   point?

16                   MS. RUSSO:  Not from the government, your Honor.

17                   MR. CRANMER:  Nor the defense, your Honor.  Thank

18   you.

19                   THE COURT:  Okay.  All right.  With that, we'll be

20   in recess.

21                   THE CASE MANAGER:  All rise.

22                   Court is in recess.

23        (At 2:49 p.m. proceedings concluded)

24

25

1                              C E R T I F I C A T E

2               I, Merilyn J. Jones, Official Court Reporter of the

3   United States District Court, Eastern District of Michigan,

4   appointed pursuant to the provisions of Title 28, United States

5   Code, Section 753, do hereby certify that the foregoing pages

6   1-29, inclusive, comprise a full, true and correct transcript

7   taken in the matter of the United States of America versus

8   Gabriel Raphael Leaf, 18-cr-20325 on Tuesday, October 29, 2019.

9

10

11                      /s/Merilyn J. Jones
                             Merilyn J. Jones, CSR, RPR

12                     Federal Official Reporter
                             231 W. Lafayette Boulevard

13                     Detroit, Michigan  48226

14   Date: December 4, 2019

15

16

17

18

19

20

21

22

23

24

25